**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **FLOWERS FOODS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **FILE NO.**_____ |
| | ) | |
| **OPENLINK FINANCIAL, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Flowers Foods, Inc. ("Flowers Foods") and files this Complaint against Defendant OpenLink Financial, LLC ("OpenLink") and shows the Court the following:

## PARTIES, JURISDICTION AND VENUE

### 1.

Flowers Foods is a Georgia corporation having its principal place of business at 1919 Flowers Circle, Thomasville, Georgia 31757.

### 2.

OpenLink is a Delaware limited liability company having its principal place of business at 1502 RXR Plaza, 15th Floor – West Tower, Uniondale, New York 11566-1502. OpenLink may be served with a copy of this Complaint through its

registered agent, The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3.

This Court has personal jurisdiction over Defendant OpenLink because OpenLink conducts business activity in the State of Georgia and in Thomas County, specifically.

4.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332. The amount in controversy exceeds $75,000.00, exclusive of costs and interest, and there is complete diversity between the parties.

5.

Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

## FACTUAL BACKGROUND

### Flowers Foods' Business and Flowers Foods' Contract With OpenLink

6.

Flowers Foods is a national bakery company that is headquartered in Thomasville, Georgia and is one of the largest producers of packaged bakery foods in the United States. Flowers Foods operates 47 facilities and maintains some of the most technologically-advanced bakeries in the country.

7.

In 2014, Flowers Foods was in search of a technology company that could help improve and streamline some of the technical components of Flowers Foods' business. Specifically, Flowers Foods was in need of a comprehensive procurement and commodities hedging platform to provide enhanced analytical, reporting and decision support capabilities to the Procurement and Risk Management team. Flowers Foods received a solicitation call from OpenLink in 2014 during which OpenLink held itself out as being able to provide a solution that would simplify Flowers Foods' procurement processes.

8.

Following this initial call in 2014, OpenLink sent Flowers Foods additional written materials, and Flowers Foods researched OpenLink on the internet. On OpenLink's website, OpenLink touted its strong capabilities in developing a turn-key solution for procurement and commodity risk management for end users of inputs such as ingredients and other items. Specifically, OpenLink's website stated:

> Openlink provides world-class turnkey implementation solutions for our customers from pre-sales assistance through "go-live" events. These solutions are based on a proven implementation methodology developed over the past fifteen years and continually enhanced to address new technology developments and evolving market-driven business needs.

Our comprehensive implementation solution teams include dedicated professionals who are experienced project managers, business analysts, technologists and trainers with in-depth industry-specific business expertise. Members of our implementation teams have direct access to in-house subject matter experts and product development personnel to ensure on-time and on-budget implementations that consistently meet client expectations.

Implementation support services include, but are not limited to:

- Complete turnkey product implementations, encompassing all implementation phases from project definition to the final production "go-live"
- Business and functional design, gap analysis, and transition planning
- Legacy interface technical design, development, testing and deployment
- System upgrades and regression testing services
- Assistance in deploying add-on modules and new business solutions

9.

In addition, from August through December of 2014, OpenLink and Flowers Foods met numerous times regarding the concept, scope and design details of what Flowers Foods was looking to accomplish. During these meetings, OpenLink personnel, including but not limited to Mark O'Toole, OpenLink's then-Vice President of Commodities and Treasury Solution, continued to represent that OpenLink had the experience and expertise to handle this project and to complete the project within the budgetary and temporal constraints required by Flowers Foods.

10.

Flowers Foods ultimately contracted with OpenLink in reliance upon these representations by OpenLink, made both verbally in meetings with Flowers Foods' personnel and in writing on OpenLink's website, that OpenLink was able to provide a technological "turnkey" solution to Flowers Foods that could be easily implemented into Flowers Foods' current business processes to not only make these processes run more effectively and efficiently, but also provide comprehensive, flexible and scalable reporting and hedge accounting support.[1]

11.

In or around December 31, 2014, Flowers Foods and OpenLink entered into a Professional Services Agreement whereby OpenLink agreed to perform certain services for Flowers Foods, including the implementation of a software program designed to assist Flowers Foods with the management and operation of its business.[2]

---

[1] Webster's dictionary defines "turnkey" as "built, supplied, or installed complete and ready to operate." Examples cited are a turnkey nuclear plant or a turnkey computer system.
[2] The Professional Services Agreement is governed by New York law.

12.

The scope of the services that OpenLink agreed to perform pursuant to the Agreement were detailed more specifically in Statement of Work No. 1 dated January 20, 2015 ("SOW No. 1"), Statement of Work No. 2 dated April 28, 2015 ("SOW No. 2), and Change Order No. 1 to Statement of Work No. 2 dated August 29, 2016 ("Change Order No. 1"), which were attached to and incorporated in the Professional Services Agreement. The Professional Services Agreement, together with SOW No. 1, SOW No. 2 and Change Order No. 1 shall be collectively referred to herein as the "Agreement." The complete scope of services to be performed by OpenLink pursuant to the Agreement is hereinafter referred to as the "Project."

13.

The original estimated completion date of the Project was December 2015. The end of the Project was to be marked by the completion of User Acceptance Testing ("UAT"). UAT refers to the last phase of the software testing process where Flowers Foods would test the software provided by OpenLink to make sure it could handle required, agreed-upon tasks in real-world scenarios. In other words, UAT is designed to make sure that the software provided by OpenLink performs as it is intended and satisfies OpenLink's obligations under the Agreement. Flowers Foods made it very clear to the OpenLink sales and project team that the Project needed to

be completed on time and within budget, and OpenLink indicated that it agreed and understood these requirements.

### OpenLink's Delays and Failures to Perform Under the Agreement

14.

However, after spending the Summer of 2015 in design workshops with OpenLink, Flowers Foods became concerned that the parties' originally agreed-upon December completion date was not feasible due to OpenLink's inability to satisfy the technical requirements of the Project in a timely manner.   During these design workshops, Flowers Foods made presentations and live demonstrations to OpenLink designed to communicate both the current state of business processes and the desired future state following completion of the Project. Toward the end of summer, Flowers Foods had presented these requirements to OpenLink numerous times; however, there was no evidence that OpenLink had documented or made plans to begin implementing the requirements.   No blueprints or other design documents had been presented by OpenLink to Flowers Foods which could validate that the requirements had been captured or understood by Flowers Foods.

15.

Finally, in August 2015, OpenLink began to produce and provide Functional Design Documents ("FDDs") for review by Flowers Foods.    The FDDs were

intended to capture the concepts discussed during the initial design meetings; however, they often required significant correction and clarification. The FDDs were isolated in nature and there was no semblance of order in which they were provided and no over-arching design document pulling it all together.  It was clear at this point that the Project was still in the design phase and that the December 2015 completion date was no longer feasible.

16.

To help keep the Project on track as much as possible, Flowers Foods made repeated requests in the Fall of 2015 for a new Project Manager to be assigned to manage the Project for OpenLink and was informed that there were no Project Managers available to work on this Project at that time.

17.

In late 2015, OpenLink finally redirected Jeff Spencer, the then-Engagement Manager of the Project, to handle both project and engagement management duties associated with the Project. Upon information and belief, Mr. Spencer was assigned this role solely due to the fact that OpenLink had no other Project Manager to assign to the Project.

18.

With no Project Manager in place until weeks before the scheduled Project completion date and with continuing delays by OpenLink occurring, it became clear that OpenLink would need additional time to complete the Project. The parties therefore executed a change order to the Agreement (Change Order No. 1) with a revised project completion date of September 2016.  This completion date was agreed upon by the parties based upon OpenLink's representations that the Project was almost complete.

19.

It then became apparent that OpenLink would not be able to meet the new September 2016 projected completion date either. OpenLink continued to miss deadlines for delivery of certain software releases and deliveries due under the Agreement and, when releases and deliveries were provided, they were often non-functional, required significant modifications and therefore useless.

20.

In or around December 2016 and January 2017, Flowers Foods contacted OpenLink to request another Project Manager and was informed that there still were no other Project Managers available.

21.

Throughout this time period, OpenLink continued to promise Flowers Foods that the Project was "almost complete," and "near the finish line" despite the fact that OpenLink was consistently continuing to be late with releases and deliveries throughout this time period and that those release and deliveries that were provided continued to be often non-functional.

22.

During this time period, OpenLink also attempted UAT twice - once in late February 2016 and once in late July 2016 - and the system failed each time. However, OpenLink continued to promise that it could and would deliver a functional finished product that would meet all of Flowers Foods' needs.

23.

On August 11, 2017, OpenLink produced a schedule with a proposed final UAT date of October 23, 2017. However, based upon the current state of the Project at that time and continued failures from OpenLink, Flowers Foods did not believe that this was a realistic projection, and the parties therefore engaged in discussions and worked to jointly develop a more realistic plan for commencing UAT and completing the Project.

Case 7:18-cv-00070-HL    Document 1    Filed 05/03/18    Page 11 of 23

24.

As a result of these discussions, final UAT was ultimately scheduled for March 2, 2018. Ultimately, however, March 2, 2018 came and went, and OpenLink still was not ready to commence UAT.

25.

On March 7, 2018, OpenLink again represented (through its counsel) that it was now ready for UAT.

26.

However, that statement also proved to be untrue, as OpenLink still needed to fix failures associated with its most recent software release to Flowers Foods and was not ready for UAT.

27.

OpenLink then stated that it would be ready for UAT on April 15, 2018 – a date that was provided by OpenLink based upon its representation of its assessment of its realistic capabilities given the current state of the Project.

**The Walk Through, the Continuing System Failures, and
the Current State of the Project**

28.

In an effort to streamline the UAT process and ensure that the testing would be successful on April 15, the parties agreed to conduct a "walk through" of the

operation of the system prior to commencing final UAT, the purpose being to determine the readiness of the system for UAT and resolve any outstanding minor (or what should be minor) issues.

29.

The walk through was originally supposed to commence on Thursday, March 22, 2018. However, OpenLink notified Flowers Foods on Wednesday, March 21, 2018 that it was not ready for the walk through and requested that the walk through commence on Monday, March 26, 2018 instead.

30.

Flowers Foods agreed and prepared for the walk through to begin on that Monday morning; however, at 7:58 a.m., two minutes before the walk through was set to begin, Mr. Spencer emailed the primary Project contacts with Flowers Foods and reported that there was a technical issue that would have to be resolved by OpenLink prior to the walk through, and that the walk through would be delayed yet again.

31.

The walk through finally commenced on Wednesday, March 28, 2018.

32.

After completing the first day of the walk through on Wednesday, it became clear to Flowers Foods that there continued to be problems with the operation of the system, including, but not limited to, basic functionality components that were still missing. Additionally, during the walk through, testing reports were not able to be generated "live" and took over an hour to generate, resulting in significant delays in the testing process. Even after receiving the reports, they were inaccurate, used incorrect units of measure, were not in the format requested, and indicated that the system had significant problems.

33.

Due to the inefficiencies, slowness and errors that occurred during the first day of the walk through, the parties were only able to make it through 10 percent of the tests.

34.

Perhaps most troubling of all, however, is that of the system components that were able to be tested, over half of them failed.

35.

By the third day of the walk through, failures with the system's functionality continued.

36.

The walk through has now primarily been completed and there continue to be significant issues with the usability of the system.

**Flowers Foods Has Suffered and is Continuing to Suffer Damages Due to OpenLink's Failure to Complete the Project and OpenLink's Numerous and Material Misrepresentations**

37.

Upon information and belief, OpenLink grossly overstated its capabilities when it first took on this Project and was not qualified to undertake the work for which it was engaged.

38.

Upon information and belief, OpenLink never had the ability to provide a "turnkey" solution for Flowers Foods (as evidenced by the fact that OpenLink has been unable to complete the Project in three years) but instead fraudulently induced Flowers Foods into believing that such a solution existed and that OpenLink could deliver that solution by December 2015.

39.

At this point, it is unknown when or if the Project can or will ever be completed.

40.

To date, Flowers Foods has paid OpenLink the sum of $2,921,945.46, directly, in connection with the Project.

41.

Additionally, due to OpenLink's failure to perform its obligations under the Agreement and complete the Project in a timely and satisfactory manner, Flowers Foods has been forced to incur additional expenses beyond the scope of the monies paid to OpenLink under the Agreement.

42.

Specifically, and by way of example only, Flowers Foods has been forced to hire a third-party consultant to address issues caused by the failure of the Project to be ready for UAT by the agreed-upon deadlines. Flowers Foods has also incurred additional salary-related costs that Flowers Foods has paid to personnel who have now been working on the Project for years longer than originally anticipated based upon OpenLink's promises and assurances of the Project completion date.

43.

Flowers Foods has made numerous attempts to resolve this matter with OpenLink, including a demand made on February 16, 2018 that OpenLink return the

monies referenced above that OpenLink has wrongfully withheld in light of its failure to perform as agreed and complete the Project.

44.

To date, OpenLink has refused to engage in any discussions regarding a resolution of these issues, has refused to return any of the monies paid to it by Flowers Foods, and has failed and refused to complete the Project, in breach of the Agreement.

## COUNT ONE

## BREACH OF CONTRACT

45.

Flowers Foods repeats and realleges the allegations set forth in Paragraphs 1 through 44 above as if the same were fully set forth verbatim herein.

46.

OpenLink and Flowers Foods entered into the Agreement providing that OpenLink would perform the agreed-upon services for Flowers Foods.

47.

OpenLink has breached the Agreement by, among other things, failing to perform under the terms of the Agreement and failing to complete the Project.

48.

Flowers Foods has suffered damages and is entitled to recover damages in an amount to be proven at trial, plus interest, attorneys' fees and costs.

## COUNT TWO

## FRAUDULENT INDUCEMENT

49.

Flowers Foods repeats and realleges the allegations set forth in Paragraphs 1 through 48 above as if the same were fully set forth verbatim herein.

50.

OpenLink represented to Flowers Foods, both verbally and in its marketing materials, including but not limited to its website, that OpenLink could provide a simple and effective "turnkey" solution to Flowers Foods' technology challenges and provide Flowers Foods with a software operating system that would effectively and efficiently assist Flowers Foods with running its business.

51.

These representations were false and, contrary to OpenLink's representations, it had neither the capability nor the experience to perform the type of Project it agreed to perform for Flowers Foods, as evidenced by the fact that it has spent in

excess of three years building a solution for Flowers Foods and has yet to complete the Project.

52.

OpenLink also fraudulently induced Flowers Foods into believing it would complete the Project by December 2015. Had Flowers Foods known that OpenLink would require in excess of three years to complete the Project, it would not have engaged OpenLink or incurred the costs associated with the Project.

53.

These misrepresentations were material and were made for the purpose of inducing Flowers Foods to rely upon them. Had Flowers Foods known the truth of OpenLink's limited capabilities, it never would have entered into the Agreement with OpenLink or hired OpenLink to complete the Project.

54.

Flowers Foods reasonably and justifiably relied upon OpenLink's misrepresentations. As a result of that reliance upon OpenLink's misrepresentations, Flowers Foods has suffered damages in an amount to be proven at trial.

55.

OpenLink's fraudulent conduct was willful, malicious wrongdoing involving a high degree of moral culpability and was done with the bad faith intent to benefit

itself financially at the expense of Flowers Foods, thus justifying an award of punitive damages in an amount to be determined by a jury.

## COUNT THREE

## CONVERSION

56.

Flowers Foods repeats and realleges the allegations set forth in Paragraphs 1 through 55 above as if the same were fully set forth verbatim herein.

57.

In willfully and intentionally taking as its own and for its own use Flowers Foods' money for services that OpenLink knew that it could not and was unable to perform, OpenLink has taken Flowers Foods' property against Flowers Foods' will and to the exclusion of Flowers Foods' rights and converted it to its own use.

58.

Flowers Foods has demanded return of its money from OpenLink, but OpenLink has refused to return that money to Flowers Foods.

59.

Flowers Foods has been damaged as a result of OpenLink's willful and intentional conversion of its property in an amount to be proven at trial.

## COUNT FOUR

## BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

60.

Flowers Foods repeats and realleges the allegations set forth in Paragraphs 1 through 59 above as if the same were fully set forth verbatim herein.

61.

Flower Foods has made repeated demands for the return of the improperly-retained funds paid to OpenLink in connection with and based upon OpenLink's misrepresentations regarding the Project, but OpenLink has willfully and maliciously refused to return these funds to Flowers Foods, nor has OpenLink completed the Project.

62.

By refusing to return these improperly-retained funds when it has no legal basis on which to do so, OpenLink is acting in bad faith.

63.

As a result of OpenLink's consistent, unrelenting bad faith, and the actions that exemplified that bad faith, Flowers Foods has been damaged in an amount to be proven at trial.

## COUNT FIVE

## UNJUST ENRICHMENT

### 64.

Flowers Foods repeats and realleges the allegations set forth in Paragraphs 1 through 63 above as if the same were fully set forth verbatim herein.

### 65.

Alternatively, OpenLink has benefitted by being unjustly enriched as a result of its retention of all of the monies paid to OpenLink by Flowers Foods for work that OpenLink did not perform and is and was unable to perform in connection with the Project.

### 66.

Flowers Foods has communicated the issues with OpenLink's performance to OpenLink, but OpenLink has refused to return any of Flowers Foods' money.

### 67.

Flowers Foods has been damaged, and OpenLink has been unjustly enriched by, OpenLink's retention of Flowers Foods' money in light of OpenLink's failure and inability to complete the Project.

## COUNT SIX

## ATTORNEYS' FEES

68.

Flowers Foods repeats and realleges the allegations set forth in Paragraphs 1 through 67 above as if the same were fully set forth verbatim herein.

69.

OpenLink has acted in bad faith, has been stubbornly litigious, and/or has caused Flowers Foods unnecessary trouble and expense.

70.

Flowers Foods has incurred attorneys' fees and expenses in connection with having to file and pursue the claims of this lawsuit.

71.

As a result, Flowers Foods is entitled to an award of its reasonable attorneys' fees, costs and expenses.

WHEREFORE, Flowers Foods requests a trial by jury and seeks the following remedies:

(1)    that the Court enter judgment for Flowers Foods and against OpenLink;

(2)    that Flowers Foods recover principal damages in an amount in excess of $75,000 to be determined at trial, plus interest;

(3)    that Flowers Foods recover additional actual, incidental, and consequential damages against OpenLink in an amount to be proven at trial;

(4)    that Flowers Foods recover punitive damages in an amount to be determined at trial;

(5)    that Flowers Foods recover attorneys' fees, costs and expenses against OpenLink in an amount to be proven at trial; and

(6)    that the Court grant such other and further relief, at law or in equity, as is just and proper.

Respectfully submitted this the 2nd day of May, 2018.

**FREEMAN MATHIS & GARY, LLP**

*s/Jill R. Johnson*
Jill R. Johnson
Georgia Bar No. 602155
Samantha L. Skolnick
Georgia Bar No. 640309

*Attorneys for Flowers Foods, Inc.*

100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
Telephone: (770) 818-0000
Facsimile:  (770) 937-9960
jjohnson@fmglaw.com
sskolnick@fmglaw.com